HARTZ, Circuit Judge,
dissenting:
I respectfully regret that I must categorically dissent. I find the majority opinion baffling because it gives no guidance to local governments about what they can do to avoid liability arising from accidents at rural railroad crossings.
The majority opinion states that the County’s liability can be based on the absence of adequate signage or failure to clear vegetation from County property. But it does not explain what signage should have been required (or why) or why clearing vegetation would have made any difference. It also endorses improper speculation that there was vegetation on County property that obscured the view of the tracks.
First consider signage. There was a stop sign before the railroad tracks. That sign clearly informed drivers that they were to come to a full stop and look for crossing traffic before proceeding. The driver at the stop sign would have no doubt that a railroad crossing was just ahead. Not only would the railroad tracks be obvious, but a sign warned of a railroad crossing. Although the majority opinion suggests that the crossing sign was smaller than the standard sign, no one could reasonably conclude that the smaller *692 size created any problem. It could not be ignored by anyone coming to a halt for the stop sign.
So what more could additional signage do? The majority opinion does not tell us. One possibility would be a sign giving advance warning of the stop sign. That would be appropriate if it were reasonable to believe that a driver on Wildflower Lane would not see the stop sign in time to come to a full stop. But no evidence in this case suggests that such a belief would be reasonable. The road, as Plaintiffs insist, was in bad condition and travel would be relatively slow. At any reasonable speed on the road, the stop sign would be clearly visible in plenty of time to stop.
I can think of no other possibilities, nor has any other possibility been suggested by Plaintiffs or the majority opinion. Are they thinking of a sign that would say “Please Stop at the Stop Sign” or “Failure to Stop at the Stop Sign Can Be Dangerous”? And if the County added such a sign, would that be enough? There is no limiting principle recognized in the majority opinion. As best as I can understand its reasoning, if there is an accident at a dangerous railroad crossing (and all railroad crossings are dangerous), a jury can decide that reasonable care required additional signage.
What about the failure to clear vegetation? To begin with, there is NO evidence in the record that any vegetation on County property obscured the view of the railroad tracks from Wildflower Lane. This point was made in the County’s appellate brief and not disputed in Plaintiffs’ reply brief. Undeterred, the majority opinion offers the following:
The record evidence is not specific as to the location of foliage obstructing a motorist’s view of approaching trains. We have noted, however, that there is evidence from which a jury could decide that foliage outside the railroad’s right-of-way creates or contributes to the problem. The state of this evidence is not fatal at the summary judgment stage for two reasons. First, it is a reasonable inference from Plaintiffs’ evidence that at least some of the visual obstruction is created by foliage within the County’s right-of-way. The County admittedly had done nothing to improve visibility along Wildflower Lane. It would be quite illogical — and quite contrary to our standard of review of summary judgment decisions — to assume that the growth stopped on its own upon reaching the County’s right-of-way. Second, and more importantly, even if at trial it were shown that none of the vision-obscuring vegetation was within the County’s right-of-way, a jury could still determine that the County’s road was unreasonably dangerous for failure to provide adequate warning of this hazard lying just across the line delineating the limit of the County’s ownership of the road.
Op. at 690.
The quoted passage contains a radical departure from long-honored summary-judgment standards. Without referring to any evidence regarding the location of the vegetation that obscured the view of the railroad tracks from the portion of Wildflower Lane under County control (the last 50 feet before the railroad tracks were within the railroad’s right-of-way), and without referring to any evidence regarding the width of the County’s right-of-way, the majority opinion states that under our summary-judgment standard of review one can reasonably infer that some of the obscuring vegetation was in that right-of-way. I beg to differ. Permitting such an inference is totally contrary to summary-judgment jurisprudence that forbids such wild speculation. We certainly should not *693 permit such speculation when it would have been so easy to produce evidence of trees or the like within the County’s right-of-way if indeed there were any. In fact, the only relevant evidence in the record strongly implies the truth of what the majority opinion would find to be “quite illogical.” The photographs taken from Wildflower Lane outside the railroad’s right-of-way indicate that the vegetation on the side of the road consists of grass and small shrubs until reaching a line of trees a good distance away, as might be expected in that area if the County’s right-of-way had been cleared at some time in the past, because trees do not just sprout up as they might in other parts of the country. Moreover, the diagram attached to the Brian Charles affidavit quoted by the majority opinion shows (1) that the only trees that would block the view of the tracks on the right as one approached on Wildflower Lane were some 100 feet away from the road (presumably outside the County right-of-way) and (2) that a small clump of trees on the left (which would have only briefly blocked the view in that direction, which was not the direction from which the train was coming in the accident here) was about 20 feet off the road.
As for the failure to warn of the obscuring trees, I wonder what the majority opinion has in mind. Should the County have erected a sign saying, “Warning. There is a railroad track in the distance beyond the obscuring trees.”? This leads to a second reason why liability cannot be based on obscuring trees, even if they were on County property: for the 50 feet leading up to the railroad tracks, which includes the location of the stop sign, there was an unobstructed view down the tracks. The majority opinion makes no attempt to explain why a driver needed to see approaching trains before entering the railroad’s right-of-way and stopping at the stop sign. There would certainly be a need if there were no stop sign, because the sight of an approaching train would inform the driver of the danger of crossing the tracks without stopping. Here, however, the driver needed to stop regardless, because the stop sign so ordered. And, although the majority opinion may be assuming otherwise, it is undisputed that there was a clear view down the tracks from the stop sign — indeed, from everywhere within the railroad’s right-of-way. The Brian Charles report states:
The view of the northbound train approach inside the right of way fence and from the area of the stop sign to the south is completely unobstructed for well over 1,000 feet down the tracks (there are photographs provided that depict the visibility). In other words if Mr. Stoller pulled up to the area of the stop sign and stops, there isn’t any vegetation to interfere with his view of an approaching train.
Aplt.App. at 311. True, the record contains testimony that it could be difficult to see approaching trains even from the stop sign. But that was not because of vegetation obscuring the view. The difficulty arose because the train blended in with the background. That background would necessarily create the same problem viewing the train anywhere along Wildflower Lane. In the circumstances, it would not be reasonable to require the County to cut down trees within its right-of-way.
My differences with the majority opinion go beyond any disagreement about whether a particular action should be required to satisfy the standard of care. My principal concern is the failure of the majority opinion to describe the particular action that should have been required and explain why that action would have enhanced safety. Such specificity and explanation is essential to give guidance to local governments regarding what can be expected of *694 them.[1] In their absence, local governments are facing what amounts to a res ipsa loquitur standard — they will be presumed negligent whenever there is an accident at a railroad crossing. Because they cannot know what will suffice to protect them from litigation, the most reasonable course of action for low-income rural counties may well be to abandon all minor roads that cross railroad tracks. Indeed, their insurers may demand that action if coverage is to be continued. That would be an unfortunate consequence of a failure of judicial guidance.

. For example, in Bober v. New Mexico State Fair, 111 N.M. 644, 808 P.2d 614 (1991), the claim was that the State Fair was negligent in not guarding against exiting traffic trying to turn left onto Louisiana Boulevard by placing traffic cones, installing a "no left turn” sign, or having an officer direct traffic. See id. at 648, 808 P.2d 614. We should demand no less specificity from Plaintiffs here.