IN THE SUPREME COURT
OF THE VIRGIN ISLANDS

**FILED**

January 18, 2024 11:14 AM
SCT-Civ-2021-0103
VERONICA HANDY, ESQUIRE
CLERK OF THE COURT

**For Publication**

# IN THE SUPREME COURT OF THE VIRGIN ISLANDS

| | |
|---|---|
| **MILADY POLANCO,** <br> Appellant/Plaintiff, <br><br> v. <br><br> **SOUTHERN HOLDINGS, LLC and RICHARD WASHBURN,** <br> Appellees/Defendants. | ) **S. Ct. Civ. No. 2021-0103** <br> ) Re: Super. Ct. Civ. No. 108/2019 (STT) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

On Appeal from the Superior Court of the Virgin Islands
Division of St. Thomas-St. John
Superior Court Judge: Hon. Renee Gumbs-Carty

Argued: March 8, 2022
Filed: January 18, 2024

Cite as: 2024 VI 8

**BEFORE:** **RHYS S. HODGE**, Chief Justice; **MARIA M. CABRET**, Associate Justice; and **IVE ARLINGTON SWAN**, Associate Justice.

**APPEARANCES:**

**Joel H. Holt, Esq.**
Law Offices of Joel H. Holt
St. Croix, U.S.V.I.

**Ryan W. Greene, Esq.**
Law Office of Ryan Greene
St. Thomas, U.S.V.I.
    *Attorneys for Appellant,*

**Matthew J. Duensing, Esq.**
**Joseph Sauerwein, Esq.**
Law Offices of Duensing & Carter
St. Thomas, U.S.V.I.
    *Attorneys for Appellee.*

## OPINION OF THE COURT

**HODGE, Chief Justice.**

¶ 1    Appellant Milady Polanco appeals from the Superior Court's September 1, 2021 order entering summary judgment in favor of Southern Holdings, LLC, and Richard Washburn.  For the reasons that follow, we reverse.

## I. BACKGROUND

¶ 2    For approximately sixteen years, Polanco worked for ABC Construction, a business owned by William Koenig.  ABC Construction operated from a property located at No. 13F Estate Lindberg Bay on St. Thomas, which was owned by Jerome Jackson Sr. and Eleanor Jackson Berg (collectively "the Jacksons").  The Jacksons leased the property to Southern Holdings, of which Washburn was the sole managing member, but gave Southern Holdings permission to sublease the property to Koenig.  Southern Holdings and Koenig executed a sublease agreement for the period from January 1, 2007, to May 31, 2011, but after this period, Koenig and ABC Construction continued to remain on the property as month-to-month holdover tenants for all times pertinent to this case.

¶ 3    On November 24, 2017, Polanco sustained injuries when she fell while walking down a vehicle ramp that served as the entrance to ABC Construction's premises, which was wet from rain as well as oil that had leaked from a forklift driven on the ramp.  Polanco filed suit against Southern Holdings and Washburn on March 1, 2019, alleging that they possessed a duty to keep the premises in a reasonably safe condition and to warn of any known dangerous conditions. Southern Holdings and Washburn filed a third-party complaint against Koenig, which resulted in a default judgment due to Koenig's failure to participate in the litigation, and sought summary judgment with respect to Polanco's claims against them.  After briefing, the Superior Court issued a September 1, 2021 order entering summary judgment in favor of Southern Holdings and

Washburn, concluding that they did not owe a duty of care to Polanco because they were not the "land possessors" of the property because they had leased their interest to Koenig, who the Superior Court concluded had exclusive possession of the property at the time Polanco sustained her injury. Polanco timely filed a notice of appeal with this Court on September 24, 2021. *See* V.I. R. APP. P. 5(a)(1).

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

¶ 4     Pursuant to the Revised Organic Act of 1954, this Court has appellate jurisdiction over "all appeals from the decisions of the courts of the Virgin Islands established by local law[.]" 48 U.S.C. § 1613a(d). Title 4, section 32(a) of the Virgin Islands Code vests this Court with jurisdiction over "all appeals arising from final judgments, final decrees, [and] final orders of the Superior Court." Because the Superior Court's September 1, 2021, order resolved all of the claims between the parties, it is a final judgment under section 32(a). *See Joseph v. Daily News Publishing Co., Inc.*, 57 V.I. 566, 578 (V.I. 2012).

¶ 5     This Court exercises plenary review over all questions of law, including the grant or denial of motions for summary judgment, and reviews findings of fact for clear error. *See St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007).

### B. Summary Judgment

¶ 6     "Premises liability actions in the Virgin Islands follow the same four-factor test as traditional negligence claims: (1) a legal duty of care to the plaintiff, (2) a breach of that duty of care by the defendant (3) constituting the factual and legal cause of (4) damages to the plaintiff." *Rymer v. Kmart Corp.*, 68 V.I. 571, 576 (V.I. 2018) (internal citations and quotation marks

omitted). In her appellate brief, Polanco contends that the Superior Court erred when it entered

summary judgment in favor of Southern Holdings and Washburn upon concluding that they did

not owe her a legal duty because they had subleased the property to Koenig. As we have previously

explained,

> A summary judgment movant is entitled to judgment as a matter of law if the movant can demonstrate the absence of a triable issue of material fact in the record. A drastic remedy, a court should only grant summary judgment when the pleadings, the discovery and disclosure materials on file, and any affidavits, show there is no genuine issue as to any material fact. Once the moving party has identified the portions of the record that demonstrate no issue of material fact, the burden shifts to the non-moving party to present affirmative evidence from which a jury might reasonably return a verdict in his favor. The non-moving party may not rest upon mere allegations, but must present actual evidence showing a genuine issue for trial. Further, the reviewing court must consider the record evidence in the light most favorable to the non-moving party.

*Id.* at 575-76 (internal citations and quotation marks omitted).

¶ 7    We agree with Polanco that the Superior Court erred when it entered summary judgment

in favor of Southern Holdings and Washburn solely on the ground that they were not "land

possessors." For more than a decade, this Court has rejected the use of outdated and formalistic

distinctions pertaining to ownership or possession of property or chattels. In *Banks v. International

Rental & Leasing Corp*., 55 V.I. 967 (V.I. 2011), we set aside the long-standing rule that only

sellers of goods, and not lessors, are liable for injuries resulting from a defective product. In *Perez

v. Ritz-Carlton (V.I.) Inc.*, 59 V.I. 522 (V.I. 2013), we agreed with the courts that had concluded

that "[f]oreseeability . . . is the touchstone of the existence of the duty of reasonable or ordinary

care" in "premises liability actions" because "[l]iability for such foreseeable harms is based on the

possessor's superior knowledge of the property, as the possessor is in the best position to know of

potentially dangerous conditions on the property—and therefore has a heightened duty to protect

those it invites onto the property from foreseeable harm caused by those conditions." *Id.* at 533-34 (collecting cases). And in *Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373 (V.I. 2014), we abolished the distinction between invitees, licensees, and trespassers in premises liability cases because "[t]he division of entrants on another's land between invitees, licensees, and trespassers was inherited from a culture deeply rooted to the land, a culture which traced many of its standards to a heritage of feudalism." *Id.* at 384. We said that "[o]nce the history and purpose of dividing entrants into invitees, licensees, and trespassers to define a land possessor's duty of care in premises liability actions is understood, it becomes clear that the maintenance of this trichotomy conflicts with this Court's jurisprudence and modern negligence law generally." *Id.* at 385. We determined that the "[c]haracterization of an entrant as an invitee, licensee, or trespasser has no bearing on the possessor's superior knowledge of the property, and to allow summary judgment where there is evidence that a plaintiff's injury was foreseeable to a land possessor, yet the possessor did not take reasonable action to prevent that injury, inappropriately places the focus of attention on the plaintiff's actions alone." *Id.* at 386. We abolished this trichotomy in favor of what we determined constituted "the soundest common law rule for the Virgin Islands": "to extend the holding of *Perez*—that the foreseeability of harm 'is the touchstone of the existence of [a land possessor's] duty of reasonable or ordinary care'—to all premises liability actions." *Id.* at 387 (quoting *Perez*, 59 V.I. at 593).

¶ 8     The reasoning we employed in *Banks*, *Perez,* and *Machado* likewise compels us to reject the formalistic distinction between owners who are "land possessors" or "occupiers" and those who are not. *See Bober v. N.M. State Fair*, 808 P.2d 614, 618 (N.M. 1991) ("[T]he duty of a landowner to exercise ordinary care to avoid creating, or permitting, an unreasonable risk of harm to others is not determined by the nature of the owner's property interest (*e.g.*, outright ownership,

a leasehold, or another possessory interest).”); *Sargent v. Ross*, 308 A.2d 528, 533 (N.H. 1973)

(“We think that now is the time for the landlord’s limited tort immunity to be relegated to the

history books where it more properly belongs.”).  Rather, we reiterate the rule first announced in

*Perez* and later extended by *Machado*: that in all premises liability actions the touchstone is the

foreseeability of harm, and not the labels attached to the plaintiff or the defendant.[1]

¶ 9     Having determined that the Superior Court erred when it held that Southern Holdings and

Washburn did not possess a duty to Polanco because they lost their status as “land possessors” by

virtue of entering into a sublease agreement with Koenig, we must now determine whether the

evidence, when viewed in the light most favorable to Polanco, establishes a genuine issue of

material fact with respect to the elements of her premises liability claim.  Applying this standard,

the record unquestionably establishes that (1) while there was another entrance, the vehicle ramp

served as the ordinary entrance to ABC Construction’s facility, (2) the vehicle ramp was steep and

---

[1] In her appellate brief, Polanco asserts that the Superior Court erred by failing to conduct a *Banks* analysis to determine whether the Virgin Islands should adopt section 53 of the Restatement (Third) of Torts: Physical and Emotional Harm, which Polanco asserts establishes a higher standard of duty for landlords in premises liability cases.  However, as we have previously explained, a *Banks* analysis “is necessary only for issues of common law . . . that this Court has not addressed.”  *In re L.O.F.*, 62 V.I. 655, 661 n.6 (V.I. 2015) (emphasis added). As explained above, this Court held in *Machado* that the rule announced in *Perez*—that the foreseeability of harm is the touchstone of the existence of a duty—would extend to “all premises liability actions.” 61 V.I. at 387.  Therefore, while the Superior Court erred by misapplying the rule announced in *Perez* and *Machado*, it did not err by failing to consider whether a common law rule already adopted by this Court through a *Banks* analysis should be replaced by a different common law rule, for “[i]t goes without saying that the Superior Court may not overrule [the] Supreme Court.” *Gerace v. Bentley*, 65 V.I. 289, 304 (V.I. 2016) (quoting *Ebersole v. Southeastern Pa. Transp. Auth.*, 111 A.3d 286, 290 n.2 (Pa. Commw. Ct. 2015)). *See also, e.g.*, *Francis v. Arizona Dep't of Transp.*, 963 P.2d 1092, 1094 (Ariz. Ct. App. 1998) (“Under the doctrine of stare decisis, once a point of law has been established, it must be followed by all courts of lower rank in subsequent cases where the same legal issue is raised.”); *McKay v. Indus. Comm'n*,  438 P.2d 757, 759 (Ariz. 1968) (“Whether prior decisions of the highest court in [the] state are to be disaffirmed is a question for the court which makes the decisions.”).

*Polanco v. Southern Holdings LLC*       2024 V.I. 8
S. Ct. Civ. No. 2021-0103
Opinion of the Court
Page 7 of 11

lacked railings, (3) Polanco slipped because the vehicle ramp was wet from rain and oil that leaked from a forklift that had been driven on the ramp, and (4) Polanco sustained injuries from her fall which required surgery on her elbow. The question, then, is whether Southern Holdings and Washburn possessed, and breached, a legal duty of care to Polanco.

¶ 10    As we emphasized earlier, the foreseeability of harm is the touchstone of the existence of a duty in all premises liability cases, and such duty is breached if the defendant failed to take reasonable action to prevent a foreseeable injury to the plaintiff. *See Machado*, 61 V.I. at 387; *Perez*, 59 V.I. at 533-34. Southern Holdings and Washburn contend that they could not have breached a duty to Polanco because they lacked the legal authority to enter the property or to make any repairs or changes to the premises due to the terms of the sublease agreement with Koenig, and in any event lacked actual or constructive knowledge of the condition of the vehicle ramp.

¶ 11    We disagree. While Southern Holdings and Washburn maintain that the sublease agreement precluded them from entering the property or ordering repairs or changes to the vehicle ramp, the plain text of that agreement establishes the contrary. Paragraph 13 of the sublease agreement, titled "Repairs by Lessee,"[2] states, in its entirety, as follows:

> Lessee shall take good care of the demised premises (interior, exterior, mechanical and structural) and the fixtures and appurtenances therein, specifically including the cistern and water supply, and at its sole cost and expense make all repairs thereto as and when needed to preserve them in good working order and condition, ordinary wear and tear excepted. All damage or injury to the demised premises and to its fixtures, appurtenances and equipment from any cause shall be repaired and restored promptly by Lessee and its cost and expense to the satisfaction of Lessor. If the premises are damaged by fire or other cause, the damages shall be properly repaired by and at the expense of Lessee. **If Lessee fails to make such repairs or restorations, or maintain the premises in at least as good a condition as upon commencement of this Lease, ordinary wear and tear excepted the Lessor may**

---

[2] The sublease agreement identifies Washburn as the "Lessor" and Koenig as the "Lessee." (J.A. 94.)

> **make the same at the expense of Lessee and collect as additional rent or otherwise the expense therefor.** The Lessee shall pay the Lessor within thirty (30) days after rendition of a bill or statement for expenses for the repair or restoration. There shall be no liability on the part of Lessor by reason of inconvenience, annoyance or injury to business arising from Lessor, Lessee or others making any repairs, alterations or improvements in or to any portion of the building, or in or to fixtures, appurtenances, or equipment thereof, and no liability upon Lessor for failure of Lessor or others to make any repairs, alterations, additions or improvements in or to any portion of the building or of demised premises, or in or to the fixtures, appurtenances or equipment thereof. Except in the case of an emergency requiring immediate action on the part of Lessor, Lessor agrees to provide Lessee with twenty-four (24) hours notice before exercising its right to enter upon the premises in order to make repairs. **Lessor shall have the right to enter upon the demised premises at all reasonable hours to inspect them or make repairs deemed essential by Lessor.** In case of an emergency (the existence of which shall be determined solely by Lessor) if Lessee shall not be present to permit entry, lessor or its representatives may enter the same forcibly without rending Lessor or its representatives liable therefor or affecting Lessee's obligations under this Lease.

(J.A. 97-98 (emphasis added).)[3]  Thus, the plain language of the sublease agreement expressly granted Southern Holdings and Washburn a virtually unrestricted right to enter the premises to inspect its condition and order any repairs that Koenig failed to make.  Likewise, paragraph 17, titled "Nuisance," provides that

> Lessee covenants that it shall not perform any acts or carry on any practices that may injure the premises or improvements, or be a nuisance or menace.  Lessee shall keep all trash and garbage in closed containers, and shall arrange for daily removal of garbage from the premises.  Lessee shall not allow vermin or noxious smells, gases or chemicals to be present on the premises, and shall keep the demised premises in a clean, healthful condition**.  It is agreed that if Lessee shall not comply with these provisions, Lessor shall have, in addition to its other rights regarding Lessee's breach of the covenants of this Lease, the right to enter**

---

[3] Despite the exculpatory provision in the lease, courts addressing similar exculpatory clauses have held that such clauses "should not be construed to absolve a landlord from liability arising from the landlord's breach of covenants in the lease . . . ." *Swisscraft Novelty Co. v. Alad Realty Corp.*, 274 A.2d 59, 63 (N.J. Super. Ct. App. Div. 1971).  Thus, "generally an exculpatory clause has as its purpose the imposition of the insurable risk of personal injury or property damage loss upon the tenant which in no way attenuates the landlord's contractual covenant to repair." *Meyer v. Caribbean Interiors, Inc.*, 435 So.2d 936, 938 (Fla. Dist. Ct. App. 1983). The provisions are considered separate and distinct. *Id.*  We agree with this reasoning.

> **upon the premises and abate the nuisance, in which event, Lessee agrees to pay
> to Lessor all charges and expenses incurred by Lessor.** Lessee shall not be
> allowed to store any dangerous, flammable or explosive chemicals or substances
> on the premises. Lessee shall, at its own expense, comply with all laws, orders,
> rules and regulations of all governmental agencies and authorities affecting the
> demised premises.

(J.A. 99 (emphasis added).) Consequently, Southern Holdings and Washburn reserved unto themselves the legal right to enter the premises and remedy any dangerous conditions caused by Koenig, including the presence of harmful chemicals or substances on the premises or even a general failure to keep the premises in "a clean, healthful condition." (*Id.*); *see Bober*, 808 P.2d at 617 ("[A] reservation of a right to enter to make repairs extends *the duty of the landlord to the traveling public, who may be off the premises*, to maintain the premises in a safe condition. It follows that a landlord who reserves the privilege which bears directly upon his *relation to the passerby has not surrendered or divested himself of the duty of care*."); *Torres v. Piggy Wiggly Shop Rite Foods, Inc.*, 600 P.2d 1198, 1200 (N.M. Ct. App. 1979) (stating that a landlord can be held liable "where the landlord has reserved the right to enter to make repairs, even in cases where he has not covenanted to make any repairs"); *Fed. Ins. Co. v. Evans Constr. of N.Y. Corp.*, 257 A.D.2d 508, 509 (N.Y. App. Div. 1999) ("[W]here a lease reserves the right to enter and make repairs, the owner does not, by way of that lease, escape liability for dangerous conditions.").

¶ 12    Moreover, there is substantial evidence, when viewed in the light most favorable to Polanco, which creates a triable issue of fact as to whether Southern Holdings and Washburn knew or should have known about the dangerous conditions that caused Polanco's injuries. During his deposition as the representative of Southern Holdings, Washburn testified that he generally visited the property "[a]t least once a year, sometimes twice" in order "[t]o encourage Mr. Koenig to clean up the property and pay his rent." (J.A. 171.) Washburn further testified that although Koenig

was required to maintain the property, he knew that Koenig "failed to do so, and the property literally went down year after year after year," (J.A. 170) and that "every time" he visited the property he would talk to Koenig "about cleaning up the place and not allowing it to get in this kind of condition." (J.A. 110.)   In addition, Washburn acknowledged that "the ramp was for vehicles" and not intended for pedestrians, and that on at least some occasions he personally had walked up and down the vehicle ramp to access the property despite the availability of other entrances suitable for pedestrians.  (J.A. 108-09.)  This testimony, when viewed in the light most favorable to Polanco and considered in conjunction with the terms of the sublease agreement, certainly creates various issues of material fact as to whether Southern Holdings and Washburn (1) were largely absentee landlords who inspected the property very infrequently despite having reserved in the sublease agreement the right to inspect the property at any reasonable hour; (2) knew that Koenig had failed to maintain the property, with the condition of the property deteriorating "year after year after year";  (3) were aware that at least on some occasions a vehicle ramp not intended for use by pedestrians had been used by pedestrians; and (4) despite having the unrestricted right under the sublease agreement to make repairs to and abate nuisances on the property without Koenig's consent, elected to not do so, and chose to only ask Koenig to clean the property after each visit, even though these requests were always unsuccessful.  Thus, we find that there are triable issues of fact which preclude the issuance of summary judgment.[4]

---

[4] In their appellate brief, Southern Holdings and Washburn maintain that Polanco contributed to her own injuries by choosing to use the vehicle ramp to enter ABC Construction's facility despite being aware that it was not intended for use as a pedestrian walkway, and that in any event Koenig was in the best position to prevent Polanco's injuries, such as by clearing debris and slippery substances from the vehicle ramp or by retrofitting it with handrails.  Yet even if this is true, it cannot serve as a complete defense to Polanco's premises liability claim, but instead only bears

### III. CONCLUSION

¶ 13     The Superior Court erred when it held, at the summary judgment stage, that Southern Holdings and Washburn did not owe a legal duty to Polanco.  There are material issues of fact as to whether Southern Holdings and Washburn possessed a legal right to enter the property and make necessary repairs, and knew or should have known of the dangerous condition that caused Polanco's injury, yet failed to take any reasonable action to prevent that injury.  Accordingly, we reverse the September 1, 2021 order entering summary judgment in favor of Southern Holdings and Washburn, and remand the case to the Superior Court for further proceedings consistent with this opinion.

**Dated this 18th day of January, 2024.**

**BY THE COURT:**

/s/ Rhys S. Hodge_____
**RHYS S. HODGE**
**Chief Justice**

**ATTEST:**

**VERONICA J. HANDY, ESQ.**
**Clerk of the Court**

**By:** _____/s/ Reisha Corneiro_____
     **Deputy Clerk II**

**Dated**: ____January 18, 2024____

---

upon the potential amount of the damages award.  *See* 5 V.I.C. § 1451(a) ("In any action based upon negligence to recover for injury to person or property, the contributory negligence of the plaintiff shall not bar a recovery, but the damages shall be diminished by the trier of fact in proportion to the amount of negligence attributable to the plaintiff."); 5 V.I.C. § 1451(d) ("Where recovery is allowed against more than one defendant, the trier of fact shall apportion, in dollars and cents, the amount awarded against each defendant. Liability of defendants to plaintiff shall be joint and several but, for contribution between defendants, each defendant shall be liable for that proportion of the verdict as the trier of fact has apportioned against such defendant[.]").

IN THE SUPREME COURT
OF THE VIRGIN ISLANDS

**FILED**

January 18, 2024 11:14 AM
SCT-Civ-2021-0103
VERONICA HANDY, ESQUIRE
CLERK OF THE COURT

**SWAN, Associate Justice, dissenting.**

## I.    FACTS AND PROCEDURAL HISTORY

¶14    On November 24, 2017, Milady Polanco ("Appellant") was employed by ABC Construction, Inc. ("ABC"), operated by William Koenig ("Koenig"). (J.A. 76). The property on which ABC operated was located at No. 13F Estate Lindberg Bay, St. Thomas, U.S. Virgin Islands and was leased by Koenig from Richard Washburn ("Washburn"). While at work on this particular day, Koenig asked Appellant to wash some dishes. (J.A. 84). Appellant complied and proceeded to a sink located on the property ("property")[1] outside of a building and at the bottom of a concrete vehicle ramp ("vehicle ramp") on the property. (J.A. 84). Appellant had already traversed this vehicle ramp several times that day, and although it was raining at this particular moment, she proceeded down the ramp again to complete the dishwashing task. (J.A. 84). As she walked down the concrete vehicle ramp, Appellant slipped and fell, sustaining injuries to her right elbow which required surgery. (J.A. 29, 84). On February 10, 2019, Appellant filed a verified complaint in the Superior Court of the Virgin Islands ("Superior Court") suing Appellee, Southern Holdings, LLC ("Southern"), for negligence, asserting that Appellee breached its duty of care owed to Appellant. (J.A. 24). Appellant subsequently filed a first amended complaint on March 16, 2020, in which she expanded her suit to include both Southern and Richard Washburn, the sole managing-member of Southern (referred to jointly as "Appellees"). (J.A. 28, 88).

¶15    Washburn is a lessee who originally leased the property from its owners Jerome Jackson, Sr. and Eleanor Jackson Berg. (J.A. 89). It was under this master lease that Washburn was given the

---

[1] The "property" is defined as "3200 square feet of or the North Half of the 80' x80' Metal Building located on the Southwest corner of Parcel No. 13F Estate Lindberg Bay, St. Thomas U.S.V.I." and the "Addition adjacent to the 3200 square feet of or the North Half of the 80'x 80' Metal Building located on the Southwest corner of Parcel No. 13F Estate Lindberg Bay, St. Thomas U.S.V.I., which contains 'the church' (approx. 1766 interior square feet and 1020 exterior square feet) directly in front of said building." J.A. at 89.

authority to sublease the property. (J.A. 89). On January 1, 2007, Washburn subleased the property to Koenig, individually and as Trustee of the WLTC Irrevocable Trust. (J.A. 89). Although the sublease expired on May 31, 2011, Koenig remained on the property as a hold over tenant, renting on a month-to-month basis, subject to the terms and conditions of the original sublease. (J.A. 89). Under the sublease, unless otherwise agreed upon, the property was to be used as a "warehouse for storage, light steel fabrication and for associated offices." (J.A. 95). Over the span of approximately 12 consecutive years commencing January 1, 2007, until the property was returned to Washburn in July 2018, Koenig was its sole occupant and exercised exclusive dominion and control over the property. While on the property, Koenig operated ABC Construction, Inc., a construction and welding company, at which Appellant worked as a part-time employee for approximately 16 years. (J.A. 76).

¶16 Prior to commencement of this action, and throughout 2016, Washburn made several attempts to evict Koenig and remove him from the property, all of which attempts were unsuccessful and were contested by Koenig. (J.A. 56). On April 25, 2017, Washburn filed a forcible entry and detainer action against Koenig, seeking to evict him on the basis of breach of contract and unpaid rents. (J.A. 56). On May 11, 2017, Koenig and Washburn entered into a mediated settlement agreement. (J.A. 57). Under this agreement, Koenig agreed, *inter alia*, to vacate the property within 60 days, presumably from the date of the agreement. (J.A. 57). On July 24, 2017, Washburn filed a motion to enforce the mediated settlement agreement after Koenig failed to comply with its terms and vacate the property. (J.A. 56). Over a year later, in July 2018, Southern was able to regain possession of the property following delay caused by Hurricanes Maria and Irma, as well as a continued legal battle attributable to Koenig's failure to comply with the mediated agreement consummated in 2017. (J.A. 58).

¶17    In her complaint, Appellant contends that she slipped and fell due to the concrete vehicle ramp being a "steep [and] slick ramp without appropriate hand rails." (J.A. 25). She asserts that at the time of the accident it was raining, and that located on the property near the vehicle ramp was a small forklift that would leak hydraulic fluid and oils, causing the ramp to become slippery. (J.A. 30). Appellant further contends that the vehicle ramp was the only pathway by which one could access the sink. (J.A. 30). Appellees filed their answer and third-party complaint on April 30, 2019, bringing Koenig into the current proceedings. (J.A. 36). On April 6, 2021, Appellees moved for summary judgment. (J.A. 52). In their motion, Appellees anchored their argument for summary judgment on three points: namely, 1) Appellees owed no duty of care to the Appellant under the law and pursuant to the sublease between Appellees and Koenig, 2) Appellees did not breach a duty of care to the Appellant, and 3) Appellees were not the cause of the Appellant's alleged injury. (*See* J.A. 52). Appellant filed her opposition to the Appellees' motion for summary judgment on May 4, 2021. (J.A. 148). On September 1, 2021, The Superior Court entered summary judgment in favor of Appellees, principally finding that the Appellees were not in possession of the property where the accident occurred and that as a result, they cannot be held liable for the injuries sustained by Appellant. (J.A. 11). The Superior Court based its ruling on the findings that the legal principles of foreseeability, notice, and contractual exclusion from liability shielded the Appellees from Appellant's claim. (*See* J.A. 11). On September 21, 2021, Appellant filed a timely notice of appeal. (J.A. 1).

## II.    JURISDICTION AND STANDARD OF REVIEW

¶18    This Court has jurisdiction over this matter pursuant to title 4, section 32 of the Virgin Islands Code. Under Section 32, this Court is granted jurisdiction over "all appeals arising from final judgments, final decrees or final orders of the Superior Court[.]" V.I. CODE ANN. tit. 4, § 32(a). On

September 22, 2021, the Superior Court entered an order granting summary judgment in favor of

Southern Holdings, LLC and Richard Washburn from which the Appellant timely appealed.[2] (J.A.

23). This order was a final order within the meaning of Section 32(a), thereby giving this Court

jurisdiction over this appeal. *Perez v. Ritz-Carlton (V.I.), Inc.*, 59 V.I. 522, 527 (V.I. 2013) (citing

*Sealey-Christian v. Sunny Isle Shopping Ctr., Inc.*, 52 V.I. 410, 418 (V.I. 2009)). "The Superior

Court's grant of summary judgment is subject to plenary review by this Court." *Perez*, 59 V.I. at 527

(citing *Williams v. United Corp.*, 50 V.I. 191, 194–95 (V.I. 2008)). To resolve the summary judgment

motion, this Court applies the same legal standard utilized by the Superior Court. *Rhymer v. Kmart

Corp.*, 68 V.I. 571, 575 (V.I. 2018) (citing *Joseph v. Daily News Publ'g Co.*, 57 V.I. 566, 581 (V.I.

2012)). "In reviewing the Superior Court's grant of summary judgment, 'we must analyze the

court's decision in the context of the substantive law governing the cause of action.'" *Aubain v. Kazi

Foods of V.I.*, 70 V.I. 943, 948 (V.I. 2019) (quoting *Pedro v. Ranger Am. of the V.I., Inc.*, 63 V.I.

511, 516 (V.I. 2015)).

### A. Summary Judgment

¶19 Under Rule 56(a) of the Virgin Islands Rules of Civil Procedure, summary judgment shall

be granted if the movant shows that there is no genuine dispute as to any material fact and that the

movant is entitled to judgment as a matter of law. Summary judgment is appropriate where "the

pleadings, depositions, answers to interrogatories, electronically stored information, stipulations,

and admissions on file, together with affidavits, if any, show there is no genuine issue as to any

material fact[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *United States ex rel. Greenfield*

---

[2] Notice of appeal was timely filed by the Appellant on September 24, 2021. (J.A. at 1). *See* V.I. S. CT. R. 5(a)(1) ("the notice of appeal required by Rule 4 Shall be filed with the Clerk of the Superior Court withing thirty days after the date of entry of judgment or order appealed from...").

*v. Medco Health Solutions, Inc.*, 880 F. 3d 89, 98 n.7 (3d Cir. 2018); *Williams*, 50 V.I. at 194.[3] When assessing these materials, the court must draw all reasonable inferences in favor of the non-moving party and take the allegations as true if properly supported. *Aubain*, 70 V.I. at 947 (V.I. 2019) (citing *Bertrand v. Mystic Granite & Marble, Inc.*, 63 VI 772, 778 (V.I. 2015)). Only disputes over facts that might affect the outcome of the suit under the governing law will preclude the entry of summary judgment. *Martin v. Martin*, 54 VI 379, 387 (V.I. 2010) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

¶20    To establish a genuine issue of material fact, the non-moving party must identify evidence that is more than "mere allegations and must present actual evidence showing a genuine issue for trial"[4] on which that party will bear the burden of proof. *Raymond-Benjamin v. Assefa*, 72 V.I. 815, 821 (V.I. 2020) (quoting *Williams v. United Corp.*, 50 V.I. 191, 193-94 (V.I. 2008)). The non-moving party is only required to present more than a scintilla of evidence that may sway a jury, even if it amounts to less (in the evaluation of the court) than a preponderance. *Williams*, 50 V.I. at 195 (quoting *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2011) (internal quotation marks omitted). Therefore, should the non-moving party cross that threshold, both parties should be granted an equal opportunity to present their facts to the jury. *Id.*

## III.    DISCUSSION

### A. The Superior Court Erred When It Failed to Conduct a *Banks* Analysis Addressing the General Duty of a Lessor.

---

[3] *See Walters v. Walters*, 60 V.I. 768, 794 (V.I. 2014) (quoting *United Corp. v. Tutu Park Ltd.*, 55 V.I. 702, 707 (V.I. 2011) (Due to summary judgment being a "drastic remedy, it should be granted only when 'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.'")).

[4] *Williams*, 50 V.I. at 194. *See Williams* 50 V.I. at 195 (quoting *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2011) ("Such evidence may be direct or circumstantial, but 'the mere possibility that something occurred in a particular way is not enough, as a matter of law, for a jury to find it probably happened that way.').

¶21    In her keynote argument on appeal, Appellant raises the issue of a *Banks* analysis[5] not being conducted by the Superior Court in addressing the general duty of a lessor. Essentially, Appellant emphasizes that there are variations in the common law addressing this legal concept. Appellant initially raised this argument in her opposition to the Appellees' motion for summary judgment; therefore, the argument presented an opportunity for the Appellees to brief the matter. Since the decision not to conduct a *Banks* analysis was briefed by the parties below and addressed by the Superior Court in its September 1, 2021, order, this dissenting opinion will examine the issue on appeal.[6] In its ruling, the Superior Court asserted that a *Banks* analysis was not needed because the legal standard for premises liability claims has been established and reaffirmed in the Virgin Islands under hallmark cases such as *Machado*[7] and *Antilles School*.[8] In those cases, this Court analyzed and established the soundest rule for negligence claims under the theory of premises liability while creating foundational legal guidelines used to navigate a negligence claim. Although both of these cases address premises liability in general, neither addresses the fundamental issue that was placed before the Superior Court in the motion practice below, which is the general duty of a lessor.

---

[5] Referring to the holding in *Banks v. International Rental & Leasing Corp.*, 55 V.I. 967 (V.I. 2011), where a three-part analysis is required in establishing common law where it was previously established on the basis of Title 1 Section 4 of the Virgin Islands Code.

[6] *See Broadhurst v. Frazier*, 57 V.I. 365, 374 n.6 (V.I. 2021) (declining to address whether the Second or Third Restatement applies when it was not raised by the parties at summary judgment and the Superior Court did not consider the issue).

[7] *See Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373 (V.I. 2014).

[8] *See Antilles School, Inc. v. Lembach*, 64 V.I. 400 (V.I. 2016).

¶22 In *Banks v. International Rental & Leasing Corp.*, 55 V.I. 967 (V.I. 2011), this Court

reexamined the implementation of Virgin Islands jurisprudence under title 1, Section 4 of the

Virgin Islands Code which states:

> The rules of the common law, as expressed in the restatements of the law approved
> by the American Law Institute .... shall be the rules of decision in the courts of the
> Virgin Islands in cases to which they apply, in the absence of local laws to the
> contrary.

1 V.I.C. §4. Under this reexamination in *Banks*, it was held that a three-part analysis must be

conducted on common law issues of first impression. A court must consider: "(1) whether any

Virgin Islands courts have previously adopted a particular rule; (2) the position taken by a majority

of courts from other jurisdictions; and (3) most importantly, which approach represents the

soundest rule for the Virgin Islands."[9] In the expansion of *Banks* in subsequent cases, it was

elaborated that "this Court has adopted the practice of not blindly following its pre-*Banks* decisions

which were predicated solely on 1 V.I.C. § 4, but instead determining whether the three *Banks*

factors justify continued reliance on the Restatement [applied]." *Gov't of the V.I. v. Connor*, 60

V.I. 597, n. 1 (V.I. 2014) (citing *Perez*, 59 V.I. at 529 n.5).[10]

---

[9] *Banks v. International Rental & Leasing Corp.*, 55 V.I. 967, 979 (V.I. 2011).

[10] *Connor*, 60 V.I. at n.1 ("Since then, this Court has adopted the practice of not blindly following its pre-*Banks* decisions which were predicated solely on 1 V.I.C. § 4, but instead determining whether the three *Banks* factors justify continued reliance on the Restatement. *E.g.*, *Perez*, 59 V.I. at 529 n.5 (noting that pre-*Banks* decision adopting Restatement (Second) of Torts § 343 had relied on 1 V.I.C. § 4 and may require reconsideration in a future case); *Joseph v. Daily News Publishing Co.*, 57 V.I. 566, 585 n.10 (V.I.2012) (considering *Banks* factors with respect to the question whether to continue to follow a pre-*Banks* decision that had adopted Restatement (Second) of Torts § 558 based solely on 1 V.I.C. § 4)"). *See also Antilles School*, 61 V.I. at n. 5 ("[T]he Superior Court cited to two prior footnotes in its opinion in which it concluded that this Court's decision in *White v. Spenceley Realty, LLC*, 53 V.I. 666 (V.I. 2010), adopted section 281 while our decision in *Sealey–Christian v. Sunny Isle Shopping Ctr., Inc.*, 52 V.I. 410 (V.I. 2009), adopted section 343. In doing so, the Superior Court misinterpreted our precedents."). We have acknowledged that decisions of this Court issued prior to this Court's acknowledgement of the implicit repeal of former 1 V.I.C. § 4—which had mandated reliance on the Restatements—should not be "blindly follow[ed]" if they "were predicated solely on 1 V.I.C. § 4." *Connor*, 60 V.I. at 605 n.1. *Sealey–Christian* and *White* are both such decisions, where sections 281 and 343 were applied solely by virtue of former 1 V.I.C. § 4. *White*, 53 V.I. at 673 & n.3; *Sealey–Christian*, 52 V.I. at 424 n.10.; *Banks v. International Rental & Leasing Corp.*, 55 V.I. 967, 979 (V.I. 2011).

¶23    The duty of a lessor, as the Appellees assert, is not an issue of first impression in the Virgin Islands. However, it is one that will benefit from the three-part legal analysis under the *Banks* decision. The Appellees rely almost exclusively on this Court's opinion in *White v. Spenceley Realty, LLC*, 53 V.I. 666, (V.I. 2010), a decision that was rendered before *Banks*, addressing the duties and liability of lessors. In *White*, the Court relied on Restatement (Second) Torts §§ 357, 360, and 361 in examining whether a duty was owed and liability should be imposed. The holding in *White* was predicated on application of the Restatement (Second) of Torts pursuant to 1 V.I.C. §4. *White*, 53 V.I. at 673 n.3. In the present appeal, the Appellees fail to justify under *Banks* why this Court should continue its reliance on this holding, a decision that was replicated by the Superior Court. Nonetheless, the Superior Court and Appellees both reached the same result under different justifications. Although I agree with the Superior Court's assessment that this Court has soundly ruled on the requirements needed for a premises liability claim, it remains necessary to address the general legal duty of a lessor within the *Banks* framework.[11] In the interests of judicial economy, I will address the *Banks* analysis as it pertains to the duty of a lessor in the present appeal.

## 1. *Banks* Analysis

¶24    Issues of land and ownership liability concerning lessors and lessees have been present in American jurisprudence since at least the 1700s.[12] As time progressed, so have the legal obligations of landlords and tenants, specifically when it involves physical harm to a third party. As it pertains to the general duty of a lessor, it is imperative that I review this duty through the lens

---

[11] *Id.*

[12] *See, e.g., Danforth v. Sargeant,* 14 Mass. 491 (Mass. 1780).

of *Banks*, to ensure that the best rule is applied here in the Virgin Islands. I begin with the first inquiry. Addressing "whether any Virgin Islands courts have previously adopted a particular rule."[13] I find that in considering Appellant's claim, that the dangerous condition existed before Koenig took possession of the premises, we have not. We have, however, addressed various subsets of a lessor's duty codified in the Restatement (Second) of Torts. In *White* we addressed a lessor's duty as it pertains to repair under the general rule that "a lessor of land is not subject to liability to his lessee or others upon the land with the consent of the lessee. . . for physical harm caused by any dangerous condition which comes into existence after the lessee has taken possession."[14] Within our opinion, we further expounded on that general rule, in section 355 of the Restatement (Second) Torts, by reviewing its exceptions under sections 360 and 361.[15] We ultimately opined in *White* that there was a genuine issue of material fact, under the lease terms at issue and the parties' interpretation of the lease as evinced in their conduct, as to whether the landlord had a duty to repair. *Id.* at 679. Although there was a challenge to a lessor's duty to repair in *White*, we did not address the general duty of a lessor and its application in and of itself.

¶25    Next, *Banks* requires us to examine "the position taken by a majority of courts from other jurisdictions."[16] In general, every jurisdiction across the United States recognizes a cause of action under the theory of premises liability. A majority of the American jurisdictions follow the bright line rule embodied in the Restatement (Second) of Torts that lessors are generally not liable to the

---

[13] *Banks*, 55 V.I. at 975.

[14] RESTATEMENT (SECOND) OF TORTS § 355 (Am. Law Inst. 1965).

[15] *See White v. Spenceley Realty, LLC*, 53 V.I. 666, 665-67 (V.I. 2010).

[16] *Banks*, 55 V.I. at 977.

lessee, or others on the land, for injuries occurring after the lessee has assumed possession of a premises. This fact the Appellant concedes and acknowledges in her brief as she advocates for this Court to implement § 53 of the Restatement (Third) of Torts, the minority view.[17] Even so, in my examination of the law in other jurisdictions I find that many courts provide and acknowledge either a plethora of exceptions to this general rule or a conditional attachment allowing appropriate plaintiffs to find relief. As delineated in further sections of the Restatement (Second) of Torts, I find that "the modern law has developed a number of exceptions."[18] In Alabama as well as other states such as Maine, Kentucky, Michigan, Indiana, Illinois, and North Carolina, although the general rule holds that the lessor is generally not liable for injuries that are caused due to a defect in the leased premises, their jurisprudence provides for recovery if an identified exception to the general rule applies on the facts of a case. For example, in Alabama, a tenant or a plaintiff may recovery for their injury should it be found that "[1] the injury-causing defect existed at the time of the letting, [2] was known to the landlord, and [3] was concealed from the tenant."[19] North Carolina and Indiana also follow a similar doctrine, under which a landlord

---

[17] Although the Appellant advocates for the principles espoused in Restatement (Third) of Torts, which has replaced the bright line rule found in Restatement (Second) of Torts that lessors are generally not liable, it is paramount to remember that the Restatement "merely represents persuasive authority" therefore an inquiry into the majority rule must be done. *E.g., Connor*, 60 V.I. at 602-03 ("While such blind reliance on the Restatements may have been justified prior to section 4's implicit repeal in 2004, it is clear that, since the creation of this Court, the Restatements no longer hold an automatic preferred status in Virgin Islands law, but as in all other jurisdictions, merely represent persuasive authority, just like law review commentaries and decisions rendered by courts outside of the Virgin Islands." *E.g., Brunn v. Dowdye*, 59 V.I. 899, 911 n.10 (V.I. 2013) ("[T]he Restatements no longer constitute the rules of decision in Virgin Islands courts."); *Banks v. Int'l Rental & Leasing Corp.*, 680 F.3d 296, 299 (3d Cir.2012) ("[I]n a commendably thorough and very well-reasoned opinion, the Supreme Court of the Virgin Islands explained ... that the Legislature did not intend for section 4 of title 1 to compel this Court to mechanically apply the most recent Restatement.") (internal quotation marks omitted); *In re Manbodh Asbestos Litig. Series*, 47 V.I. 215, 226 n.7 (V.I. Super. Ct. 2005) ("Most other jurisdictions view the Restatements as merely an adjunct in their consideration of legal issues."); *see also Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir.1995).

[18] RESTATEMENT (SECOND) OF TORTS § 356 cmt. a (Am. Law Inst. 1965).

[19] *Avon-Avalon, Inc. v. Collins*, 643 So.2d 570, 572 (Ala. 1994).

may be subject to liability in cases where there is an imbalance of knowledge between the landlord and tenant and the tenant is unaware of the existence of a defect.[20]  As I examine other states' jurisprudence on the matter, I find states such as Illinois, which carves out exceptions for recovery should there be a finding of fraudulent concealment or that the condition rises to the classification of a nuisance.[21]  However, even considering the general rule and the exceptions that may follow, many states, especially in cases regarding commercial leases, attach liability to one major factor, which is possession.

¶26     Under property law principles, "[w]hen land is leased to a tenant, the law of property regards the lease as equivalent to a sale of the land for the term of the lease.  The lessee acquires an estate in the land, and becomes for the time being the owner and occupier, subject to all of the liabilities of one in possession, both to those who enter the land and to those outside of it."[22]  A majority of states acknowledge that possession, either partial or whole, dictates liability in the area of premises liability.[23]  States such as California, New York, Delaware, Georgia, Ohio, Missouri, and many more ground their premises liability laws in the doctrine of possession.  In *Alcaraz v.*

---

[20] *Boyer v. Agapion*, 264 S.E.2d 364, 367-68 (N.C. Ct. App.1980) ("A landlord is subject to liability to persons on the leased property only if, (a) the tenant does not know or have reason to know of the condition or the risk involved; and (b) the landlord knows or has reason to know of the condition, realizes or should realize the risk involved, and has reason to expect that the tenant will not discover the condition or realize the risk.").

[21] *See Yacoub v. Chicago Park Dist.*, 618 N.E.2d 685 (Ill.App.Ct.1993).

[22] RESTATEMENT (SECOND) OF TORTS § 356 cmt. a (Am. Law Inst. 1965); *see Lucier v. Impact Recreation, Ltd.*, 864 A.2d 635 (R.I. 2005) (quoting RESTATEMENT (SECOND) OF TORTS § 356, cmt. a).

[23] States that generally require some degree of possession when assessing tortious liability, either partial or whole, include Arizona, California, Connecticut, Delaware, Florida, Georgia, Illinois, Indiana, Iowa, Kansas, Kentucky, Maine, Missouri, Nebraska, New Jersey, New York, Nevada Ohio, Oklahoma, Rhode Island, South Carolina, South Dakota, Texas, Wyoming, and West Virginia.

*Vece*, 929 P.2d 1239, 1244 (Cal. 1997),  when addressing a landlord's liability, the Supreme Court

of California followed the principle that "the duties owed in connection with the condition of land

are not invariably placed on the person [holding title] but, rather, are owed by the person in

possession of the land because [of the possessor's] supervisory control over the activities conducted

upon, and the condition of, the land."[24]  The *Alcaraz* court went on to add emphasis by highlighting

the Restatement (Second) of Torts' use of the phrase "possessor of land" rather than "owner,"

further emphasizing the comment section which states that "[t]he important thing in the law of

torts is the possession and not whether it is or is not rightful as between the possessor and some

third person."[25]  Additionally, Delaware courts have held "to impose a duty on a landowner [or]

landlord requires 'actual control' of the premises."[26]  Even in the Midwest, courts in Illinois have

held that a duty owed to third parties resides only in the person who retains control of the

property.[27]  Likewise, Ohio makes explicit in cases stemming from commercial leases that under

---

[24] *Alcaraz v. Vece*, 929 P.2d 1239, 1244 (Cal. 1997) (quoting *Sprecher v. Adamson Companies*, 636 P.2d 1121 Cal.1981)); *see also Preston v. Goldman*, 720 P.2d 476, 482 (Cal. 1986) ("*Sprecher* demonstrates that we have placed major importance on the existence of possession and control as a basis for tortious liability for conditions on the land.").

[25] *See Alcaraz*, 929 P.2d at 1245 (quoting RESTATEMENT (SECOND) TORTS § 343, cmt. a,).

[26] *Johnson v. ADJ Realty of Delaware LLC*, No. 08C-03-092 WCC, 2010 WL 1138820 (Del. Super. Ct. 2010) (unpublished); *see also Monroe Park Apts. Corp. v. Bennett*, 232 A.2d 105, 108 (Del.1967) (affirming *Young v. Saroukos*, 185 A.2d 274 (Del. Super. Ct. 1962) (observing that "[a]lthough the Plaintiff cites the correct legal premise that a duty is owed where the lessor retains some control or possession over the premises, Plaintiff fails to allege facts to support a finding that the Defendants actually retained some control or possession over this property").

[27] *See Bennett* ex rel. *Estate of Bennett v. Northlake Assocs. Ltd. P'ship*, 442 F.Supp.2d 569 (N.D. Ill. 2006.) ("Under Illinois law, the duty toward a third party arises out of possession and control, and can be attributed only to the persons who have possession and control, and accordingly, when landlord relinquishes control of property to tenant, the landlord owes no duty to third parties and the tenant."); *see also Sedlacek v. Belmonte Properties, LLC*, 16 N.E.3d 878, 882 (Ill. App. Ct. 2014) (quoting *Klitzka v. Hellios*, 810 N.E.2d 252 (Ill. App. Ct. 2004) ("Therefore, a lessor who relinquishes control of property to a lessee owes no duty to a third party who is injured while on the leased property. The landlord's liability for the leased premises is extinguished because the lessee acquires an estate in the land and temporarily becomes both owner and occupier, subject to all of the responsibilities of one in possession to those who enter upon the land and those outside of its boundaries.").

the governing jurisprudence, "one having neither possession nor control of premises is ordinarily not liable for damages resulting from the condition of the premises."[28] Most notable is our holding in *Antilles School, Inc. v. Lembach,* 64 V.I. 400, 413 (V.I. 2016), in which this Court opined, while addressing premises liability, that the "basis of the legal duty of care is the possession or control of the premises where [an] injury occurred[.]" Possession has decidedly proven, through decisions in multiple jurisdictions, to be pivotal in assessing liability to a party under a premises liability claim. Nonetheless, although the majority position is explicit and uncontested by the Appellant, it must be determined which rule is best for the Virgin Islands.

¶27      Though *Banks* requires a three-part analysis, it has been held that the third consideration, the determination of the soundest rule for the Virgin Islands, is the most imperative and consequential.[29] In determining the soundest rule, this Court finds it paramount for the Territory to align itself with an approach that supports consistency and fairness. Considering the previous rulings within Virgin Islands jurisprudence as well as the weight of the reviewed authority, I conclude that the general rule that a lessor, who does not retain whole possession or control of a leased property, should not be liable in tort to third parties for injuries arising after the lessee assumes possession and control of the leased premises is the soundest rule for the Virgin Islands. Essentially, the duty owed to injured parties should devolve upon the party who has exercised possession of the premises in which the injury occurred. Generally, this principle does not exclude arguments for possible exceptions to this rule. However, as no exception has been raised by

---

[28] *Boatwright v. Penn-Ohio Logistics,* No. 12 MA 39, 2012 WL 6738549, at *2 (Ohio Ct. App 2012) (unpublished).

[29] *Better Bldg. Maint. of the V.I., Inc. v. Lee,* 60 V.I. 740, 755 (V.I. 2014).

Appellant, I will not address any at this time as each exception will require its own individual assessment. This general rule is based on "the principle that a party 'in possession is in a position of control, and *normally* best able to prevent any harm to others.'" *Merritt v. Nickelson*, 287 N.W.2d 178, 180 (Mich. 1980) (quoting Prosser, Torts (4th ed.) § 57, p. 351 (emphasis added)). Furthermore, it acknowledges the understanding that liability caused by a defect in the premises "ordinarily depends upon the power to prevent the injury"[30] and, therefore, rests not on ownership but rather on who has control and possession of the property at the time an incident occurs. This stance is not novel in the Virgin Islands, because this Court has previously opined, post-*Banks*, that liability arises by virtue of the "possessor's superior knowledge of the property, as the possessor is in the best position to know of potentially dangerous conditions on the property[.]" *Perez.*, 59 V.I. at 533. Adopting this principle in the Virgin Islands promotes a proper assessment of liability in premises liability cases by placing the focus on the individual(s) responsible for the condition of the premises as well as those in the best position to prevent harm at the time of an alleged incident. Additionally, caselaw precedent across the United States strongly follows the notion that liability is predicated upon possession and control over the property, a principle that should continue to apply in the Virgin Islands. Through rejecting the imposition of liability upon a lessor simply based on title alone, I conclude that the soundest rule for the Virgin Islands is to expressly attribute liability upon an analysis of control and possession, thus endorsing true accountability in our premises liability doctrine.

### B. Appellees Did Not Owe the Appellant a Legal Duty of Care as They were Neither in Possession nor Control of the Property.

---

[30] *Nezworski v. Mazanec*, 2 N.W.2d 912, 917 (Mich. 1942).

¶28     Considering the *Banks* analysis , I agree with the Superior Court's ultimate conclusion that the Appellees lacked possession of the property on which the accident occurred and, accordingly, did not owe Appellant a duty of care. Precipitously attaching a legal duty to an individual or entity simply because that party individual holds the legal title of lessor would be incongruous with the principles of premises liability established by the Supreme Court of the Virgin Islands. This Court has acknowledged and established that the elements amounting to a negligence claim in premises liability cases are: "(1) a legal duty of care to the plaintiff; (2) defendant's breach of that duty of care; (3) factual and legal causation; and (4) damages. " *Aubain*, 70 V.I., at 948 (V.I. 2019) (citing *Coastal Air Transp. v. Royer*, 64 V.I. 645, 651 (V.I. 2019)). In addressing premises liability and the legal duty required, this Court has agreed that the "basis of the legal duty of care is the possession or control of the premises where [an] injury occurred[.]" *Antilles School*, 64 V.I. at 413. A "possessor of land" has been defined as "(a) a person who occupies the land and controls it; (b) a person entitled to immediate occupation and control of the land, if no other person is a possessor of the land under Subsection (a); or (c) a person who had occupied the land and controlled it, if no other person subsequently became a possessor under Subsection (a) or (b)." RESTATEMENT (THIRD) OF TORTS: PHYS. & EMOT. HARM § 49 (2012); *Cohen v. Elephant Rock Beach Club, Inc.*, 63 F.Supp.3d 130, 140 (D. Mass. 2014) (citing to this Restatement provision in its assessment of control under premises liability claims).

¶29     Premises liability claims are certainly not a new occurrence in the Virgin Islands. In *Perez*,[31] the defendant owned and operated a hotel on the property where plaintiff's injury occurred. In that case, the plaintiff asserted a claim for relief under the theory of premises liability

---

[31] *See Perez v. Ritz-Carlton (V.I.), Inc.*, 59 V.I. 522 (V.I. 2013).

after falling down stairs covered in debris. This event prompted the Court to address the narrow question of whether constructive notice can be established through the knowledge of a reoccurring dangerous condition. Similarly in *Antilles School*,[32] the defendant also owned and operated a facility, namely a school, on the property on which the plaintiff was injured after tripping and falling off a bridge located on the property. In *Machado*,[33] the defendant controlled and maintained the parking lot and complex on which multiple businesses operated, and on which the plaintiff injured herself upon tripping over a sprinkler head. In the course of its prior jurisprudence, this Court has abolished distinctions in the duty owed to different classes of entrants and has confirmed foreseeability as the touchstone of premises liability. Though each of these cases has addressed different facets of premises liability law, the property owners and operators all have one very notable characteristic in common: a degree of retained possession or control over the property involved.

¶30     Analyzing similar cases such as *Machado*, *Perez*, and *Antilles School*, this Court has consistently distinguished and attributed liability to those who have retained, either partially or wholly, the role of "possessor of land." The status of possessor goes to the essence of negligence under a premises liability claim. Additionally, imposition of liability is appropriate in light of the "possessor's superior knowledge of the property, as the possessor is in the best position to know of potentially dangerous conditions on the property[.]" *Perez*, 59 V.I. at 533 (V.I. 2013). Local jurisprudence confirms that stitched into the fabric of negligence and liability in the Virgin Islands are the concepts of control and possession.

---

[32] *See Antilles School, Inc. v. Lembach*, 64 V.I. 400 (V.I. 2016).

[33] *See Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373 (V.I. 2014).

¶31    Reviewing the evidence in the light most favorable to the Appellant as the non-moving party in this matter, I agree with the Superior Court's finding that the Appellees did not have possession nor retain control over any portion of the property where the plaintiff was injured. Under plaintiff's negligence theory of premises liability, it must first be established that the Appellees owed Appellant a legal duty of care, which turns on whether Appellees retained some form of control or possession of the property. Absent any such evidence identified by the Appellant, I turn to the most notable and undisputed pieces of evidence to address this point which are (1) the sublease consummated between Washburn and Koenig, and (2) the legal crusade Washburn conducted against Koenig seeking to regain possession of the property from sublessee Koenig.

### 1. Appellees Relinquished All Control and Possession of the Property to Koenig under the Sublease.

¶32    Addressing first the sublease, it is undisputed that Washburn and Koenig entered into a sublease for the property, and Koenig was subject to the terms of the sublease when Appellant's accident occurred. Under this sublease, Koenig essentially contracted to lease the property in an "as is" condition, and accepted the premises in its state and condition on the date he executed the sublease. In accordance with the sublease, and as evidenced by uninterrupted years of occupancy on the property, Koenig was the only tenant on the property. Also, irrefutable and more controlling are the terms of the sublease. The unambiguous language of the sublease signed by both Koenig and Washburn on September 1, 2006, provided that Appellees relinquished all control, maintenance, and possession of the property as well as protected themselves from claims such as Appellant's. The "Lessor Not Liable" clause, found in paragraph 11 of the sublease, states that "Lessee agrees that Lessor and Lessor [sic] shall not be liable for, and Lessee waives all claims for

damage to person or property sustained by Lessee or any person claiming through Lessee resulting from any accident or occurrence in or upon the demised premises [.]" This clause created a contractual safeguard from liability for Appellees, one that was in effect during the duration of the sublease and was in effect at the time of Appellant's accident. Furthermore, in the event of a claim, such as Appellant's, it is noteworthy that under the "Indemnification" clause in paragraph 10 of the sublease, Koenig as the sublessee agreed that he "shall defend and indemnify Lessor against all claims (a) arising from Lessee's conduct or management of, or from any work or thing whatsoever done in or about, the demised premises…. (d) arising from any accident, injury or damage whatsoever, however caused, to any person or persons…. Occurring during such term on, in, or about the demised premises or the common area adjacent thereto arising from the tenant's occupancy and use of the same." This clause shielded the Appellees from the Appellant's claims and placed the responsibility and liability for such claims more appropriately on Koenig.

¶33    The Appellees further distanced themselves from control of the property by relinquishing any duty or obligation to perform repairs or maintenance. Accordance to the express terms of the sublease, under the "Repairs by Lessee" clause in paragraph 13, it states that "Lessee shall take good care of the demised premises (interior, exterior, mechanical and structural) and fixtures and appurtenances there[.]" Likewise, it is also important to acknowledge paragraph 17 of the sublease titled "Nuisance." This clause states that "Lessee covenants that it shall not perform any acts or carry on any practices that may injure the premises or improvements, or be a nuisance or menace. Lessee shall keep all trash and garbage in closed containers, and shall arrange for daily removal or garbage from the premises. Lessee shall not allow. . . gases or chemicals to be present on the premises, and shall keep the demised premises in a clean, healthful condition." These portions of

the sublease further place the obligation to care and control the property squarely on Koenig, and establish that the maintenance as well as the removal of any spills or debris were Koenig's duty and responsibility, not that of Appellees. These clauses include the cleanup of the hydraulic fluid and oils from the forklift that had allegedly leaked onto the vehicle ramp, which was a substantial contributor to Appellant's fall and resulting injury.

¶34    Appellant attempts to dispute these clauses by stating that Appellees had a duty of care to persons on the premises regardless of the undeniable outlined provisions of the sublease. To accept this argument would be inconsistent with the established legal standard of premises liability upheld by this Court. As stated in our holding in *Antilles School*, the **basis** for premises liability is possession or control of the premises. Appellant must cross this threshold first before proceeding in her quest to establish the liability of the Appellees. Here, it is very evident that Koenig not only had possession and control of the property, but also the responsibility for its maintenance and preservation, as provided by explicit provisions of the sublease.

¶35    Furthermore, it is important to note that, although Appellees did reserve the right to enter the premises for repairs should Koenig fail to make repairs or restoration, this in and of itself does not equate to the Appellees retaining control. While this point was not raised by the Appellant, this Court finds it important to address any possible avenues for retained control by the Appellees. In addressing premises liability, American courts have likewise viewed this as a significant factor. In Maine, for example, the Supreme Court acknowledged and affirmed this exact viewpoint in *Boles v. White*, 260 A.3d 697, 702 (Me. 2021), a premises liability case in which the court stated that its conclusion "is consistent with decisions in other jurisdictions that have deemed a landlord's mere reservation of the right to enter and repair the premises insufficient evidence of that landlord's

control for purposes of liability." Rulings from courts in Georgia, Rhode Island, Ohio, and Illinois have endorsed the same principle. [34] I agree with these holdings that reserving a right to enter and repair is not evidence of control but rather is "merely to protect [the landlord's] investment and reversionary interest in the property."[35] Furthermore, I agree that provisions such as these are "nothing more than what any prudent landlord would include in a commercial lease."[36] I apply the same understanding here, that the Appellees' retained right to enter onto the property to conduct repairs if Koenig failed to make repairs is simply protecting their investment and ultimate property right. Moreover, I note that the record here confirms this understanding, since Appellees' behavior further shows that control of the property was relinquished as this was a right they never enforced as they seldom came into contact with the property, and there is no evidence provided that repair was conducted by the Appellees.

¶36      Additionally, I would reject the contention that a contracting party cannot relinquish control and liability in a contractual agreement. Appellant urges this Court to hold that – even though the sublease contractually shielded Washburn from liability arising from incidents on the

---

[34] *E.g., Bennett*, 442 F.Supp.2d at 571 ("Under Illinois law, reservation of the right to inspect and repair does not impose a duty to repair upon, or demonstrate control by, the lessor."); *Humphrey v. Byron*, 850 N.E.2d 1044, 1050 (Mass. 2006) ("[A] landlord's reservation of "various rights to make alterations and repairs and to approve [the tenant's] alterations and repairs," and specifically a requirement in a lease "that the landlord give its prior written consent to construction that the tenant proposes to undertake," does not render the landlord liable to the injured plaintiff for an injury occurring on the leased premises."); *Lake v. APH Enterprises, LLC*, 702 S.E.2d 654, 656-57 (Ga. Ct. App. 2010) (holding that "a landlord's retained limited rights of entry and inspection of the premises do not make it liable or subject to liability"); *Hendrix v. Eight & Walnut Corp.*, 438 N.E.2d 1149, 1151 (Ohio 1982) (Court held that a reserved right to enter the premises for specified purposes such as to inspect the premises "does not justify a finding that the lessor retained control of the premises); *Lucier v. Impact Recreation, Ltd.*, 864 A.2d 635, 640 (R.I. 2005) (holding that lease provisions in a commercial least agreement did not give the land lord control over the property but were merely included to protect the landlord's investment and reversionary interest in the property, and that "these provisions were nothing more than what any prudent landlord would include in a commercial lease").

[35] *Boles v. White*, 260 A.3d 697, 702 (Me. 2021).

[36] *Lucier*, 864 A.2d at 640.

property, and placed all responsibilities of maintenance and repairs on Koenig 10 years prior to this incident – Appellees should still be held liable. To do so would disavow the very principle that landlord-tenant law stands upon in the Virgin Islands, namely, the ability of the parties to a lease to freely negotiate levels of control of and access to premises in a given situation. This principle is an important one that should not be jettisoned.

¶37     Alternatively, the Appellant references Appellee Washburn's sporadic and limited number of visits to the property during the duration of the sublease in an effort to demonstrate that regardless of the sublease, the Appellees still retained control over the premises. This argument is specious. It is undisputed that Washburn would visit the property to investigate Koenig's activities on the premises one to two times annually and to encourage Koenig to remove trash and debris from the property as well as to pay his rent. Appellant offers no other evidence of contact by Appellees regarding the property that would support the theory that Appellees retained any modicum or iota of control or possession. Unlike the circumstances presented in *Perez* and *Anitlles School*, where the Appellee owned and operated the premises, or *Machado*, where the Appellee still maintained and had control over the premises, all of which were exhibited through continued and constant contact, here we have none of those circumstances. Here, Appellees possess none of these forms of control over the property. On the contrary, the present case involves a lessor whose presence on the property was scanty and whose obligation for the maintenance and repair of the property was non-existent. The Appellees did not conduct any activity on the property, retain any contractual obligations for the property, nor have any significant presence on the property. To contend that the Appellees were in possession or retained control of the property with such sporadic visits and under such limited circumstances is meritless. Thus, even Appellant's

alternative argument as to Appellees' control and possession of the property is meritless, spurious, and fails to survive summary judgment.

### 2. The Eviction Actions Filed by the Appellees Support the Finding that the Appellees Did Not Have Possession or Control of the Property at the Time of the Accident.

¶38    Moreover, an additional indication that the Appellees lacked possession of the property are the eviction actions filed by Washburn in order to regain possession of the property. Washburn initiated and was in the middle of a legal action to recover the property from Koenig when Appellant's accident occurred in November 2017. Beginning in 2016, Washburn commenced legal eviction proceedings to recover the property, all of which were contested by Koenig.[37] Following Koenig's contractual failure to maintain the property and to satisfy his financial obligations to Washburn, Washburn attempted to assert his rights to the property and to regain the control of the premises that he had subleased to Koenig. Washburn's most noteworthy legal strides in his attempts to regain control over the property include filing a suit for breach of contract, filing an action for forcible entry and detainer, entering into a mediated agreement with Koenig,[38] and attempting to enforce that mediated agreement when Koenig failed to comply with its terms. Appellees' legal efforts continued until July 2018 when Washburn was finally able to recover the property. A finding that Washburn was still in possession of the property at the time of the Appellant's accident, would be inconsistent with law in the Territory requiring land owners to look to the court for legal remedies rather than exercising self-help relief, which is unlawful, in

---

[37] 28 V.I.C. § 781.

[38] Under the mediated settlement agreement entered by Washburn and Koenig, under cases nos. ST-16-CV-394 and ST-17-CV-2013, Koenig agreed to a judgment of eviction and debt, agreeing that he would begin fulfilling the debts owed and would clear the premises by removal of "any and all trash, debris, scrap metal, unused equipment, and derelict vehicles" within 60 days. (J.A. at 57).

recovering their properties.[39]  Due to the lack of control and possession of the property by the Appellees as evidenced by (1) the terms of the sublease; (2) the limited contact with the property; and (3) the legal obstacle the Appellees overcame to regain possession of the property, the unavoidable conclusion is that Appellees did not possess or have control of the property at the time of the Appellant's accident.  Since it has been recognized that possession must be established to support a finding of a legal duty in this context, I conclude that Appellees did not owe Appellant a legal duty of care when she sustained her injuries.

### C. The Superior Court Did Not Err in Finding that there was No Genuine Issue of Material Fact Regarding the Appellees' Lack of Notice and Foreseeability.

¶39    In her final issue on appeal, Appellant asserts that the trial court's entry of summary judgment was inappropriate because the court made factual findings as it pertains to notice and foreseeability, impermissibly resolving material facts that should have been decided by a jury. Appellant asserts that the Superior Court erred in its finding that there was insufficient evidence that the Appellees were on notice of the unsafe vehicle ramp since it existed when the premises were subleased, and that this was a fact for the jury to resolve.  In asserting that the Appellees had notice, the Appellant relies on the doctrine of constructive notice.  It has been held that, outside of actual notice, constructive notice may be established based upon a dangerous condition existing for a length of time prior to an incident occurring in which "the owner should have become aware of it through exercise of reasonable care." *Machado*, 61 V.I. at 393.  Furthermore, as previously stated, it has been a consistent doctrine in premises liability decisions from this Court that "the

---

[39] *See* Virgin Islands Port Authority v. Joseph, 49 V.I. 424, 427 (V.I. 2008) (citing *Suarez v. Christian*, 19 V.I. 1586 (D.V.I. 1981)) ("The Virgin Islands Code provides an action for forcible entry and detainer as a peaceful alternative to the often-violent consequences of property owners exercising their right to self-help.").

possessor is in the best position to know [by both real and constructive notice] of potentially dangerous conditions on the property[.]" *Perez*, 59 V.I. at 533.

¶40     Before addressing this argument, I must first note that it is moot, as the argument of notice applies to those who are in possession of the property, which in this case is Koenig, not the Appellees. However, as this Court has previously explained, "this Court is not an Article III court," and "[t]herefore, this Court's general practice of not considering a moot . . . [issue] on the merits is not jurisdictional, but an exercise of judicial restraint that, as with other judicially-created doctrines, is subject to waiver." *Vazquez v. Vazquez*, 54 V.I. 485, 489-90 n.1 (2010) (some alterations omitted) (citing *Arlington Funding v. Geigel*, 51 V.I. 118, 124 (V.I.2009)); *People Matter of M.R.*, 64 V.I. 333, 350 (V.I. 2016) (observing that, with respect to moot issues on appeal, the Court "may exercise supervisory power . . . to resolve an important . . . issue in order to eliminate uncertainty and add importantly to the efficient administration of justice"). Since this issue was raised in the Appellant's appeal, I will exercise my discretion to address it. It is undisputed that the vehicle ramp was on the property when it was subleased to Koenig by Washburn. Furthermore, it is also obvious and undisputed that the vehicle ramp was not constructed nor contracted to be used for pedestrian traffic but rather for the ingress and egress of mechanized vehicles. The Appellant concedes this point in her first amended complaint in which she states that the vehicle ramp is "only appropriate for vehicular entry and exit into the building." Although Appellant describes the vehicle ramp on which she fell as "steep and uneven" there is no evidence that this was a dangerous condition in and of itself. Appellant provided no evidence as to the actual construction of the vehicle ramp beyond her own self-serving claim to prove that

the vehicle ramp was in a dangerous form or state.[40]  The mere existence of the vehicle ramp on the property does not alone support the claim that it was a dangerous condition.  There must be additional evidentiary support for Appellant's argument to create a material disputed fact, but none was proffered in this case.  Lacking such, the Appellant stalls in her ability to provide any additional evidence proving that the vehicle ramp, in the condition it was subleased to Koenig, was indeed in a dangerous condition.

¶41  Additionally, even though the vehicle ramp was used as a pedestrian walkway by Appellant, she admittedly walked the vehicle ramp multiple times that day without any problem or difficulty before her accident at the end of her work shift.  The Appellant attempts to label the vehicle ramp as a dangerous condition by asserting that at the time of her fall, the vehicle ramp was covered in water from the rain that day and hydraulic fluid and oils from a small forklift stationed next to the ramp.  Even in this claim, the Appellant is unable to demonstrate how this amounts to actual or constructive notice for the Appellees.  I agree with the Superior Court that this is a condition of which Koenig, not the Appellees, would have had notice as the land possessor and then-current sole occupier of the property.  Accordingly, it is Koenig, not the Appellees, who possessed the superior knowledge of the conditions of the property at the time of the accident.  The Appellees rarely were on the property, and in those instances of their visits to the property there is no evidence provided that the Appellees were ever aware of the vehicle ramp turning into a dangerous condition due to the combined occurrence of rain mixed with the hydraulic fluid and oils from the forklift.  If anyone, Koenig would have been in possession of this knowledge due to

---

[40] *See Gibson v. Symbion*, 627 S.E.2d 84 (Ga. Ct. App. 2006) (In addressing a slip and fall case under similar conditions in which the plaintiff slipped on a slippery ramp, the court held that the plaintiff must show that the ramp itself was hazardous and furthermore that "[m]ere speculation about the ramp's condition cannot defeat summary judgment.").

his continuous presence on the property as well as his contribution to the disarray and despair of the premises. Further, if this condition was created, per the terms of the sublease, it was Koenig's contractual responsibility to ensure a safe environment. The Appellant further failed to provide any evidence that any of the construction equipment located on the property that contributed to the slick condition of the ramp, was under the ownership or control of the Appellees giving possible rise to assertion of liability upon Appellees.

¶42    This observation further extends to the Appellant's claim that there was no viable entrance to the building, forcing the Appellant to use the vehicle ramp as a pedestrian walkway. Initially, in paragraph 10 of her first amended complaint, Appellant claimed that "[t]he only entrance to the building is by way of a ramp that does not have hand rails and is unreasonably steep to be used as a pedestrian walkway." Appellant gave the impression that there was no door or alternative access point to the building other than the vehicle ramp she used. However, Appellant later changed her contention and revealed that there was a door leading to the building; it was simply blocked off. In her declaration, the Appellant clarified that "[t]here was no other available access to the building. . . there was a door on the building that was always blocked off... Additionally, there were rocks and a gut in front of the door that made it inaccessible even if it had not been blocked off." First, as stated above, Koenig was contractually the party responsible for any maintenance, upkeep, and repairs on the property during his continuous tenancy. In accordance with the sublease which Koenig had been under for approximately 12 years at the time of the accident, Appellees retained no responsibility for the care of the property. As evidenced by the sublease, under the "Repairs" and Nuisance" clauses any impediment, deficiency, or restriction on the premises that kept the Appellant from accessing the building door would have been Koenig's, not the Appellees',

contractual obligation to rectify. This squarely includes the state of the entryway that Appellant

claims was unusable due to its derelict condition. Therefore, even taking this allegation as true, it

still does not survive summary judgment as Koenig was in charge of repair and ensuring that the

premises were kept in a safe and accessible condition.

¶43     Secondly, Appellant has failed to provide evidence supporting her claim other than

Appellant's own conclusory allegation that this was indeed the only accessibly entry way. Thus,

she failed to overcome Appellee Washburn's verified testimony that there were other entrances

leading to the inside of the building at the bottom of the vehicle ramp that allowed access to the

sink area that he personally used during his visits to the property. During a videotaped oral

deposition, Washburn directly addressed the building's entrance on the property:

> Q: Okay. Have you ever noticed the ramp being slick in any way on any of your visits?
> Washburn: No, because I usually didn't walk up and down the ramp. I mean, the ramp was for vehicles. I walked around and into the door.
> Q: Okay. So going back up to this Exhibit 5, can you tell me which way you would use to go into the building if you didn't use the ramp?
> Washburn: Straightforward.
> Q. Okay.
> Washburn: See that door?
> Q. Yes.
> Washburn: You go around to the right. There's a regular
> door, and I would usually go through that door.
> Q. Okay. And --
> Washburn: It was on the side of the building, yeah.
> Q. Sure. And I know we can't see it in this photo, but is there a walkway, or is it a grassy area? Can you describe the walking surface that you would use to go to that door?
> Washburn: It was mostly gravel. And I believe there was a little walkway to the door. Again, I -- actually, I don't recall. That -- that -- this whole space was in constant change and flux. And as stated before, my visits were
> infrequent, so it changed quite a bit from visit to visit.

Washburn's testimony not only confirmed that there was another entrance, a point that the Appellant ultimately concedes through her explanation of the entrance's condition, but also that Appellees lacked any notice that the entrance was unusable per Appellant's claim. Washburn explained that he has never used the vehicle ramp to enter or exit the building, but instead walks around to the door on the side of the building, facts left undisputed by the Appellant. Washburn's evidence reinforces the fact that it is Koenig, as the possessor of the property, and not the Appellees, who had real and constructive notice of the entrance's deficiencies as per Appellant's claim.

¶44    Lastly, the Appellant proffered no evidence to support her assertion that Appellees were aware that the vehicle ramp was being used as a pedestrian walkway. The vehicle ramp was not designed nor constructed to be used for pedestrian traffic. There is no evidence that Koenig made the Appellees aware of any use of the vehicle ramp as a pedestrian walkway, nor is there any evidence or allegation that Appellees ever witnessed such occurrence. The individual who would have had knowledge of the ramp being utilized as a pedestrian walkway is Koenig, since he was the sole occupant of the property at the time of the accident. It is imperative to remember that in order to survive a properly supported summary judgment motion, the non-moving party must identify proper contradictory proof. However here, of course, even had Appellant been able to provide such evidence, her claim would still be inadequate as liability falls more squarely upon Koenig because he was the possessor of the property at the time of her fall.

¶45    Although Appellant likens her case to the circumstances in *Machado*, she fails to acknowledge the difference in the amount of evidentiary support provided by the injured party in *Machado*. This Court has previously held in negligence claims that there must be more than mere

allegations to survive summary judgment, which would allow a reasonable jury to fairly assess liability.[41] Unlike the circumstances presented in *Machado* where there was evidence in addition to the allegations made by Appellant Machado, including other eyewitnesses and documentation of previous incidents showcasing the dangerous condition, here we merely have the conclusory allegation from the Appellant. Consequently, since the Appellant lacked the ability to prove that the vehicle ramp was a dangerous condition at the time of the sublease; that there was no entrance to the building at the time of the sublease causing her to use the vehicle ramp for pedestrian purposes; or that this scenario was a reoccurring condition warranting the Appellees to take notice, she offered no basis for finding that Appellees had either constructive or actual notice of the ramp's condition. In light of these deficiencies in the support identified by Appellant, it is not necessary in the present opinion to address relating to foreseeability.

## IV. CONCLUSION

¶46      Although the Superior Court did err when it decided not to conduct a *Banks* analysis addressing the duty of a lessor, I would hold that summary judgment against the Appellant was nonetheless appropriate given the facts, evidence, and surrounding circumstances provided to the Superior Court. Upon conducting a *Banks* analysis addressing the general duty of a lessor, I would hold that the soundest rule for the Virgin Islands, which promotes accountability and consistency within our jurisprudence, is that a lessor who does not retain whole possession or control of a leased property should not be liable in tort to third parties for injuries occurring after the lessee has assumed possession. Furthermore, I would conclude and reaffirm that, in the Virgin Islands, possession and/or control of a subject property is the foundation for negligence claims based upon

---

[41] *See Machado*, 61 V.I. at 393.

premises liability.   There was no material issue in this case regarding the fact that the Appellees were not in possession of the property in which the Appellant fell; therefore, they did not owe a duty of care to the Appellant, and cannot be found liable on the premises liability theory Appellant asserted.   Consequently, the Superior Court did not err in its ultimate decision to grant summary judgment in its September 21, 2021 order.   Therefore, I would affirm the Superior Court's judgment entered in favor of Appellees.

**Dated this 18th day of January, 2024.**

**IVE ARLINGTON SWAN**
**Associate Justice**

**ATTEST:**

**VERONICA J. HANDY, ESQ.**
**Clerk of the Court**

By: _____

Dated: _____